IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| ROBERT KNOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action Number |
| | ) | 00-C-1841-S |
| TUSCALOOSA COUNTY, ALABAMA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

On November 8, 1999, Plaintiff Robert Knox filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that his employer, the Tuscaloosa County Road and Bridge Department ("R&B"), had denied him the position of road foreman because of his race. He further alleges that R&B subjected him to racially disparate terms and condition of employment.

Based on the evidence adduced at trial, this Court concludes that Plaintiff has carried his burden of proof that, although he worked as a road foreman most of the time, he was neither classified nor paid as a road foreman because of his race. He has also proved that he was subjected to racially disparate terms and conditions of employment.

**Factual Findings**

Robert Knox was initially employed by R&B on April 13, 1977, as an Operator I and remained in that position until he became R&B's first black supervisor in 1990. Plaintiff succeeded the retiring white labor foreman, James Banks. After R&B made the decision to place Plaintiff in

1



Bank's position, he overheard Mr. Hagler say, "We'll give him the job, but he won't get the promotion and the money."(R at. 87, 88.) Plaintiff was not paid the same wage rate as his predecessor. The Court concludes that the differential pay rate was motivated by Plaintiff's race.

The labor foreman is "generally responsible for directing a crew of laborers engaged in repairing or doing general maintenance work on and around roads and road structures." (Pla.'s Ex. at 35.) According to the County Engineer, "[t]he labor foreman generally has a crew, and they go out and perform more manual-type labor." (R. at 161.) On the other hand, "[r]oad foremen are in charge of more complex road construction projects, . . . they have more people to supervise, and a little bit higher classification of work." (*Id.*) Because of the considerable overlap between the work of the laborers and the equipment operators, the more important criterion for assessing whether one is performing as a labor foreman, rather than as road foreman, is the number of employees supervised. (*See* Pla.'s Ex. at 35, 36, and Daily Work Reports ("DWRs")). The County Engineer testified that a road foreman supervises roughly five to six people, while a road foreman supervises ten to fifteen employees. (R. at 161, 162.) The Court credits this testimony.

Based on the DWRs, the size of Plaintiff's work crews for the month of May, 2001, was as follows:

| Date    | Size of Crew | Date    | Size of Crew | Date    | Size of Crew |
|---------|--------------|---------|--------------|---------|--------------|
| 5/01/01 | 11           | 5/09/01 | 7            | 5/22/01 | 19           |
|         | 19           | 5/15/01 | 14           | 5/23/01 | 12           |
| 5/02/01 | 22           | 5/17/01 | 6            | 5/24/01 | 16           |
| 5/04/01 | 5            |         | 10           | 5/29/01 | 17           |
| 5/07/01 | 3            | 5/18/01 | 11           | 5/30/01 | 19           |
| 5/08/01 | 7            | 5/21/01 | 16           | 5/31/01 | 13           |

Plaintiff supervised more than ten employees, seventy-two percent (72%) of the time he supervised crews in May 2001. In other words, Plaintiff's work crews had an average of 12.6 employees during

that month. There is no evidence that the sizes of Plaintiff's crews in May 2001 were atypical in any respect from other months for which DWRs were provided to the Court. (R. at 189.)

Further evidence of Plaintiff's performance of road foreman duties lies in the fact that he was often assigned the duty of opening up the Samantha Work Camp and dispatching the various employees assigned to that camp - equipment operators as well as laborers - to their daily job assignments. (R. at 97.) However, unlike the classified road foremen, Plaintiff was not given a key to open the camp until nine or ten months before his retirement in January 2002. (R. at 108, 114.) Plaintiff requested a key on many occasions, but his requests were denied. As a result, Plaintiff would be forced to either wait at the locked gate for five or ten minutes until some operator with a key showed up, or he would be forced to leave the camp, go to the home of one of the white road foremen or operators (whom he supervised), and borrow a key with which to open the camp. (R. at 108-113, 128-133.) The Personnel Director agreed that a foreman who is expected to open a camp should have been given a key to the camp. (R. at 153.) The Court finds that Plaintiff was not given a key to the camp simply because of his race.

Plaintiff testified that he worked as a road foreman eighty percent (80%) of the time. On the other hand, David Michael Henderson, the Engineering Coordinator and one of Plaintiff's supervisors, testified that based on the Daily Work Reports, Plaintiff worked as a road foremen only about 5% of the time. (R. at 192.) Based on all the evidence, including a review of the DWRs, the Court finds that Plaintiff worked as a road foreman roughly seventy-five percent (75%) of the time.

Plaintiff does not possess a high school diploma or a GED. Plaintiff made known to R&B that he desired a road foreman position in 1994. (R. at 90,91.) Aware of Plaintiff's lack of a high school diploma, Bobby Hagler, the County Engineer who supervises R&D, recommended to the

3

Civil Service Board that a high school education requirement be imposed on all applicants for the road foreman position in 1995. The Civil Service Board accepted his recommendation, apparently without any investigation of the racial effect of this new requirement. At that time, several of the white Road Foremen did not posses a high school diploma, but they were grand-fathered into their positions. The Court finds that the high school education requirement was recommended by Hagler solely for the purpose of blocking the Plaintiff's from promotion to a road foreman position. The Court further finds that had the recommendation not been made by Hagler, The Civil Service Board would not have adopted the high school education requirement.

Although he was a supervisor, Plaintiff was never invited to attend the supervisors' meetings. Indeed, all of the other supervisors were whites. Plaintiff would hear about the supervisors' meetings after they were over. (R. at 119-123.) The Court finds that Plaintiff was not invited to attend supervisors' meetings because of his race.

There is no bar to a retired worker returning to R&B as a part-time employee. In fact, after his retirement, a white labor foreman, Lewis Cooley, was given a part-time job at R&B. (R. at 116.) Notwithstanding that Plaintiff was Cooley's supervisor as a part-time worker, Henderson directed Plaintiff to shovel dirt as part of a two-man crew while Cooley drove the tractor - which Plaintiff was fully qualified to drive. (R. at 116-119.) The Court finds that this disparate job assignment was based on Plaintiff's race.

## Conclusions

From May 5, 1999, until his retirement on January 1, 2002, Plaintiff was paid Eighty-Eight Thousand, Three Hundred Four and 94/100 Dollars ($88,304.94). (Def.'s Ex. at 5, 6, 7, 8.) In the absence of more concrete evidence, and based on his yearly increases as a labor foreman, the Court assumes that if Plaintiff had been paid as a road foreman, he would have received a five percent

(5%) annual raise. Based on that assumption, and the further assumption that Plaintiff would have been entitled to the annual Seven Hundred Dollars ($700) longevity payment, he would have received Ninety-Nine Thousand, One Hundred Eighty-Eight and 14/100 Dollars ($99,188.14) during the same period had he been paid the wages of a road foreman. (Pla.'s Ex. at 14.) Therefore, Plaintiff is entitled to Ten Thousand, Eight Hundred Eighty-Three and 20/100 Dollars ($10,883.20) in backpay, exclusive of prejudgment interest.

Plaintiff's compensatory damages are Twenty Thousand Dollars ($20,000.00). However, because of the failure of Plaintiff's counsel to comply with the Pretrial Order's requirement to list his damages, the compensatory damages will not be assessed against R&B. Instead, they will be deducted from the attorneys' fees to be awarded.

By separate order, the appropriate relief will be granted.

Done this __23rd__ day of September, 2003.

_____
Chief United States District Judge
U.W. Clemon